UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CORY GROSHEK,
    and all others, similarly situated,

                              Plaintiff,

v.                                                Case No.: 15-cv-157

TIME WARNER CABLE INC.

                              Defendant.

---

**DEFENDANT'S BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

---

### I.    INTRODUCTION

*"TWC can either pay me [Plaintiff Cory Groshek] a high six figure settlement to make this issue disappear now, or it can pay seven or eight figures to settle it later (and I know, for a fact, that TWC will settle at some point, as all companies do in cases such as this). The choice is TWC's – either pay me, or pay a minimum of $1000.00 to everyone affected by its FCRA violations over the last five years, plus punitive damages and reasonable attorney's fees."*

-- Plaintiff Groshek, in a letter sent to Time Warner Cable ("TWC") employee Christine Dzujna, prior to filing this purported class action.[1]

Plaintiff Cory Groshek seeks to represent a nationwide class of absent class members in this Fair Credit Reporting Act 15 § U.S.C. 1681, *et seq.* ("FCRA") class action. Plaintiff's Motion for Class Certification should be denied because he has already shown that he cannot be trusted to adequately represent absent class members, as he used their potential claims as leverage for his own personal financial gain. Plaintiff revealed his true colors in an email he sent to TWC on January 30, 2015, quoted above, in which he threatened that if TWC did not make an

---

[1] *See* Exhibit 1 ("Extortion Email") to Declaration of Christine Dzujna ("Dzujna Dec."), attached hereto as Exhibit A.

1

exorbitant payment to him individually, he would bring a class action lawsuit with himself as the "obvious" class representative.  Indeed, while Plaintiff acknowledged that the FCRA entitled him to no more than $1,000.00 in statutory damages, he nonetheless made an extortionate demand for a payment in the "***high six figures***," <u>using</u> the absent class members as "leverage" for his scheme:  "either pay me" an amount in the "high six figures," or "pay a minimum of $1000.00 to everyone affected by its FCRA violations over the last five years."  A week later, after TWC did not comply with his demand, Plaintiff filed the instant lawsuit.

Plaintiff's extortive email exposes him as an inadequate class representative who cannot be trusted to fairly represent the class.  As the Supreme Court has observed, adequacy of representation is critical to the integrity of a class action lawsuit, as the named plaintiff has the power to bind the absent class members to a judgment or settlement.  Because of this power, the named plaintiff must be, *inter alia*, trustworthy.  Where there is a "significant risk" that the named plaintiff will "sell out" the class members for his own gain, the named plaintiff is inadequate.  Here, there is no mere "risk" that Plaintiff will attempt to sell out the absent class members -- *he already has*.  For this reason alone, he is not adequate to represent the class.

Plaintiff is also inadequate because his conduct violated Wisconsin law and thus exposes him to potential counterclaims and/or criminal prosecution.  Specifically, Plaintiff's extortionate email violated Wisconsin Statute Section 943.30(1), which prohibits a person who "either verbally or by any written or printed communication … threatens or commits any injury to the … business, … or the profits and income of any business, … with intent thereby to extort money or any pecuniary advantage whatever."  Wis. Stat. Section 943.30(1).  Plaintiff violated this statute by threatening to file a lawsuit that would "ensure that TWC will be paying out millions of dollars (think upwards of $5-10 million)" if it refused to pay him (individually) "in the high six

2

figures" – *i.e.* over 100 to nearly 1000 times more than he could possibly be entitled to for a purported FCRA violation.  Plaintiff's misconduct subjects him (but not the class) to potential counterclaims and/or prosecution for violations of Wisconsin law.  As such, Plaintiff will be distracted by these weighty issues, thus exacerbating the lack of alignment of interests between Plaintiff and the putative class.

Accordingly, because the defects to Plaintiff's adequacy are incurable (by his own doing), deferral on class certification briefing is not necessary and Defendant respectfully requests that this Court deny Plaintiff's motion for class certification on adequacy grounds.[2]

## II. RELEVANT BACKGROUND

Plaintiff applied, and was hired for, the position of Customer Service Representative by TWC[3] on or around September 12, 2014 and began working on October 24, 2014.  (Dzujna Dec. Ex. 1.)  On January 28, 2015, after working at TWC for less than 4 months, Plaintiff voluntarily resigned from TWC.  *Id.*  Two days later, Plaintiff sent TWC employee Christine Dzujna an email entitled "URGENT:  TWC Violation of the Fair Credit Reporting Act (FCRA) / Immediate settlement negotiation requested under **threat** of Class Action litigation" (hereinafter referred to as the "Extortion Email") (Dzujna Dec. Ex. 1) (emphasis added).  In his email, Plaintiff falsely accused TWC of willfully violating the FCRA and demanded that TWC pay him (individually) in the "high six figures" to keep quiet.[4]

---

[2] Defendant acknowledges that under some circumstances it may be appropriate to allow a party to move for class certification before they have full discovery of all facts, and then request the opportunity to take discovery before a ruling, as set forth in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). Here, however, Plaintiff's inadequacy as a class representative is so glaring and irreparable that there is no need to delay ruling on this dispositive element of class certification. *Id.* at 896 (discovery may "be unnecessary to resolve class issues").

[3] Time Warner Cable Inc. ("TWCI" or "Defendant") is the only entity that Plaintiff named and served in this action, and therefore is responding as Defendant in this matter. However, TWCI is not a proper defendant in this action. TWCI will cooperate with Plaintiff to substitute the correct entity should this case proceed.

[4] As set forth more fully in Defendant's motion to dismiss (filed contemporaneously with this Opposition), Defendant denies that TWC violated the FCRA, willfully or otherwise.

3

Plaintiff's Extortion Email is rife with threats of a class action lawsuit, warnings that he will reject settlement offers of less than the "high six figures range," and reminders that the purported claims of the absent class members provide <u>him</u> with "all of the leverage" to demand such an exorbitant payout. *Inter alia*, Plaintiff's Extortion Email states:

> [I]f I am forced to initiate litigation, [] I can (and will) seek statutory and punitive damages, as well as reasonable attorney's fees, on behalf of every potential class member I can, dating as far back as five years (or however long is possible at the time such Class Certification is sought or obtained).
>
> \* \* \*
>
> [B]ecause **I understand the leverage that I have in this situation** . . . I would like to offer TWC the opportunity **to settle this matter one-on-one with me**, out of court, and without me needing to involve or hire a law firm to represent me.
>
> \* \* \*
>
> I understand that you may be tempted to try to make this issue disappear for **a token payment of, say, $500-$2500 [i.e., over twice what Plaintiff would be entitled to under the FCRA]**, but I will have you know that such offers **would meet my definition of "lowball" offers, and thus will be rejected immediately**.
>
> \* \* \*
>
> TWC is not going to avoid Class Action litigation with me unless I am offered a *substantial* settlement amount which takes into account the totality of its FCRA violations.
>
> \* \* \*
>
> In case I am not being clear, **I expect that any settlement offer TWC makes to me be in the <u>high six figures range</u>, at least.**
>
> \* \* \*
>
> I am not going to budge on my six figure settlement requirement. . .
>
> \* \* \*

4

> **Make no mistake about it, I have all of the leverage in this situation and TWC has none.**
>
> \*\*\*
>
> Should I need to hire law firms to represent me, it has already been established that they would do so on a 100% contingency basis, meaning that I have absolutely no financial restrictions that would preclude me from suing TWC.
>
> \* \* \*
>
> TWC should consider itself quite fortunate that it has not already become just another statistic in the long list of companies which have paid out millions upon millions of dollars in FCRA-related Class Action settlements over the course of the last few years and should find itself extremely grateful that **I am kind enough to offer a way out of having to become such a statistic**, which I can assure you it will if I do not receive your full cooperation in this situation.
>
> \* \* \*
>
> I fully expect that TWC will repay my kindness by making me a six figure settlement offer to prevent me from hiring the law firms I have in mind, which would **ensure that TWC will be paying out millions of dollars (think upwards of $5-10 million)** in what could easily become the largest FCRA-related settlement or verdict in the history of cases such as this.
>
> \* \* \*
>
> In conclusion, TWC can either pay me a high six figure settlement to make this issue disappear now, or it can pay seven or eight figures to settle it later (and I know, for a fact, that TWC will settle at some point, as all companies do in cases such as this.) The choice is TWC's -- **either pay me, or pay a minimum of $1000.00 to everyone affected by its FCRA violations over the last five years**, **plus punitive damages and reasonable attorney's fees**.

(*Id.*) (emphasis added).

One week after sending his missive, when TWC had not complied with Plaintiff's extortionate demand for a "high six figures" payment to him individually to settle a violation worth a maximum of $1000, Plaintiff filed the instant action. (DE 1.) Along with his complaint,

Plaintiff filed his motion for class certification, which he described as a "Placeholder" and asked the Court to defer briefing, hearings, and ruling until after discovery. (DE 2 & 3.) As set forth below, however, there is no need to defer briefing or ruling because Plaintiff's extortionate conduct exposes him as a grossly inadequate class representative, and the Court should deny Plaintiff's motion for class certification on that ground.

### III. ARGUMENT

**A. Deferral of Class Certification Briefing Is Unnecessary and Futile.**

Plaintiff purports to file his class certification motion as a "placeholder," pursuant to *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011), and asks this Court to defer briefing, hearing, and ruling until a later date following discovery. (DE 2 & 3.) Plaintiff's motion should be denied because, regardless of any discovery sought by Plaintiff, he will never be able to establish his adequacy as a class representative. Rather, as discussed below, Plaintiff's pre-litigation conduct whereby he attempted to use absent class members as pawns for his own personal financial gain renders him an inadequate class representative. Additionally, Plaintiff's actions expose him to potential counterclaims and criminal liability that destroy any alignment of interest he might have otherwise had with the putative class. Because the issue of Plaintiff's inadequacy can be resolved now, discovery is "unnecessary to resolve class issues." *Damasco,* 662 F. 3d at 896 (discovery may "be unnecessary to resolve class issues"). Accordingly, in the interest of judicial economy and efficiency, and because discovery will not cure the issues underlying Plaintiff's inadequacy, Defendant respectfully requests that the Court decline to defer class certification briefing and ruling and instead deny Plaintiff's motion for certification now, before the parties waste substantial resources on class discovery.

**B.      Plaintiff Will Not Be Able To Meet Rule 23(a)(4)'s Adequacy Requirement.**

Federal Rule of Civil Procedure confers broad discretion on the district courts regarding whether to certify a class. *Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 892 (7th Cir. 2012) ("we first review the district court's decision regarding class certification for an abuse of discretion because "the law gives broad leeway to district courts in making [such] decisions.'") (citations omitted). To certify a class, Plaintiff has the burden of establishing each element of Rule 23(a), including a showing that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Wal-Mart Stores, Inc. v. Dukes,*131 S. Ct. 2541, 2551 (2011). Regardless of whether Plaintiff could meet the requirements under Rule 23(a)(1)-(3) after discovery, Plaintiff's actions to date establish that he is not now, nor will ever be, an adequate class representative as required by Rule 23(a)(4).

Because a named plaintiff has the power to bind absent class members, constitutional considerations demand that the plaintiff be adequate. *Spano v. The Boeing Co.*, 633 F.3d 574, 586-87 (7th Cir. 2011) (there is a "constitutional dimension to [the adequacy] part of the inquiry; absentee members of a class will not be bound by the final result if they were represented by someone who had a conflict of interest with them or who was otherwise inadequate.") Given these constitutional implications, an adequate class representative is "key to the integrity of class action litigation." *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 390 (N.D. Ill. 2006) (citations omitted). The plaintiff bears the burden to prove that he is an adequate class representative. *Forrest v. Shenandoah Valley Nat. Park*, No. 06-C-11, 2007 WL 1029503, at *1

(E.D. Wisc. Mar. 28, 2007) (plaintiff has burden to prove class should be certified) (citations omitted) (Randa, J.).[5] Here, Plaintiff's own actions prevent him from meeting that burden.

> 1. *Plaintiff is inadequate because he has already attempted to sell out the class for his own financial gain.*

A plaintiff's credibility, motivation, and integrity are "crucial" to determining if he is an adequate representative. *Howard v. Ray's LLC*, No. 1:08-CV-627-RLY-MJD, 2011 WL 4625735, at *5 (S.D. Ind. Sept. 30, 2011) ("The motivation and credibility of an individual seeking to represent absent class members is a crucial consideration when considering that individual's adequacy as a class representative . . . . Integrity and credibility are appropriate characteristics to examine when determining if an individual would make an adequate representative because a lead plaintiff will act as a fiduciary for his absent cohorts") (citations omitted);[6] *see also, e.g., Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990) (plaintiff inadequate because not credible). The integrity inquiry focuses on with whether the plaintiff, as fiduciary to the class, is "trustworthy enough to protect the interests of the class by working to pursue a remedy or settlement that benefits the class as much as it does himself or his counsel." *Pope,* 240 F.R.D. at 390 (citations omitted); *see also Howard*, 2011 WL 4625735, at *5 ("The motivation and credibility of an individual seeking to represent absent class members is a crucial consideration when considering that individual's adequacy as a class representative."); *Davidson v. Citizens Gas & Coke Util.*, 238 F.R.D. 225, 228-229 (S.D. Ind. 2006) (named plaintiff's duty includes pursuing remedy or settlement that is fair to class members). If there is a significant risk that the named plaintiff will "sell out" the class for his own personal gain or otherwise put his interests above the class, that plaintiff is an inadequate class representative. *Pope,* 240

---

[5] Pursuant to Local Rule 7(j), *Forrest* is attached hereto as Exhibit B.

[6] Pursuant to Local Rule 7(j), *Howard* is attached hereto as Exhibit C.

8

F.R.D. at 390-91 (plaintiff not adequate where there is significant risk they "may be tempted to sell out the class for benefits to themselves.").

Here, there is not just a *risk* that Plaintiff will try to sell out the class -- he has already tried to do so. Indeed, in his Extortion Email Plaintiff *expressly* used the class members as *"leverage"* to demand an exorbitant payoff to keep him from filing the instant lawsuit. (Dzujna Dec. at Ex. 1 (stating Plaintiff is well aware of "the leverage that [he has] in this situation;" reminding TWC to that he has "all of the leverage in this situation and TWC has none").) That is, ***Plaintiff offered TWC an opportunity to avoid paying the absent class members anything if TWC instead paid him in the "high six figures range, at least"*** -- *i.e.* between 100 to nearly 1000 times more than his statutory remedy. (*Id.* ("either pay me, or pay a minimum of $1000.00 to everyone affected by its FCRA violations over the last five years").) Given Plaintiff's demonstrable willingness to sell out the class for his own benefit, he cannot be trusted to protect the interests of the absent class and is therefore not an adequate representative.

> 2. *Plaintiff is inadequate because his attempt to extort TWC violates Wisconsin law and destroys his alignment of interests with the class.*

Plaintiff's Extortion Email further renders him inadequate as a class representative because it subjects him to potential criminal prosecution and a counterclaim for extortion under Wisconsin Statute Section 943.30(1). This statute states:

> Whoever, either verbally or by any written or printed communication … threatens or commits any injury to the … business, … or the profits and income of any business, … with intent thereby to extort money or any pecuniary advantage whatever … is guilty of a Class H felony.

Wis. Stat. Section 943.30(1); *Bernegger v. Banks*, No. 08-C-156, 2008 WL 3539777, *2 (E.D. Wisc. Aug. 12, 2008) (plaintiff may maintain private cause of action based on statute).[7]

---

[7] Pursuant to Local Rule 7(j), the *Bernegger* decision is attached hereto as Exhibit D.

9

Plaintiff's Extortion Email presents a straight-forward violation of this statute. That is, Plaintiff threatened a multi-million dollar injury to TWC's business with the intent of extorting a "high six figures" payment from TWC. Specifically, Plaintiff threatened, *inter alia*, that if he did not personally receive "a six figure settlement offer" he would:

> hir[e] the law firms I have in mind, which would ensure that TWC will be paying out millions of dollars (think upwards of $5-10 million) in what could easily become the largest FCRA-related settlement or verdict in the history of cases such as this.

(Extortion Email.) Moreover, Plaintiff communicated his threat knowing that even if TWC violated the statute, which it did not, he would only be entitled to a maximum of $1,000. There is no question that this conduct violates the Wisconsin extortion statute. *See State v. Ball*, 2000 WI App 32, 232 Wis. 2d 557, 608 N.W.2d 437, 1999 WL 1244284, at *2 (extortion "requires that the person accused made the threat while knowing he was not entitled to the property he was demanding") (internal citations omitted).[8] Accordingly, Plaintiff's actions expose him to a potential counterclaim and criminal prosecution for his felonious behavior.

"The dangers of inadequate representation [are] particularly strong" where a counterclaim creates "a lack of alignment of interests between named Plaintiffs and the class as a whole." *Juarez v. Jani-King of California, Inc.*, 273 F.R.D. 571, 580 (N.D. Cal. 2011) (denying class certification); *see also Audio-Video World of Wilmington, Inc. v. MHI Hotels Two, Inc.*, No. 7:O9-CV-39-F, 2011 WL 1059169, at *6 (E.D.N.C. Mar. 18, 2011) (denying class certification where counterclaims created "issues unique to the named plaintiffs" that would "complicate class treatment …, confuse the issues, pose additional disincentives for exploration of alternative resolutions, and very likely could prejudice an outcome favorable to a large majority of"

---

[8] Pursuant to Local Rule 7(j), the *Ball* decision is attached hereto as Exhibit E.

10

potential class members);[9] *CC Investors Corp. v. Raytheon Co.*, No. CIV.A. 03-114-JJF, 2005 WL 1026904, at *4 (D. Del. Apr. 22, 2005) ("presence of this counterclaim also weighs against a finding that [plaintiff] has established the typicality and adequacy of representation requirements for class certification under Rule 23(a)").[10]

Here, the counterclaim and the specter of criminal prosecution create a strong "lack of alignment of interests" between Plaintiff and the class. *See Raytheon*, 2005 WL 1026904, at *4; *see also Audio-Video World*, 2011 WL 1059169, at *6 ("[w]hile the existence of counterclaims, alone, certainly is no bar to class certification where it is otherwise appropriate … the lurid details alleged by both sides here, together with an unavoidable focus on the historical conduct" of the parties would "overshadow the comparably tedious [] claim that supposedly is the basis for this lawsuit"). Indeed, a significant portion of the litigation will focus on the lurid details of Plaintiff seeking to secure himself a massive financial windfall in exchange for turning a blind eye to the alleged violations to the class he now seeks to represent.

Additionally, Defendant's counterclaim is premised on Plaintiff's lack of integrity with regards to this litigation. Thus, Plaintiff's lack of integrity is not just apparent, but it will also be a primary focus of the litigation, which further renders Plaintiff an inadequate class representative. *See Bohn v. Pharmavite, LLC*, cv-11-10430, 2013 WL 4517895, *1 (C.D. Cal. Aug. 7, 2012) ("Plaintiff's credibility or integrity issues are relevant to her adequacy to the extent they concern issues directly relevant to the litigation or involve confirmed examples of dishonesty, such as a conviction for fraud.").[11]

---

[9] Pursuant to Local Rule 7(j), *Audio-Video World* is attached hereto as Exhibit F.

[10] Pursuant to Local Rule 7(j), *Raytheon* is attached hereto as Exhibit G.

[11] Pursuant to Local Rule 7(j), the *Bohn* decision is attached hereto as Exhibit G.

11

## IV. CONCLUSION

Plaintiff's Extortion Email reveals his absolute lack of adequacy as class representative. Not only does it demonstrate that Plaintiff is willing to compromise the rights of the absent class for his own gain, it confirms that he may try to duplicitously use their rights as "leverage" to line his own pockets. Plaintiff's inadequacy is compounded by the fact that his actions expose him to potential criminal and civil liability that will distract his attention during this litigation. Plaintiff's inadequacies cannot be cured by discovery (and will likely be exacerbated by it). Because it is apparent that this class cannot be certified with Plaintiff as a class representative, Defendant respectfully requests that the Court deny Plaintiff's motion for class certification.

Dated this 8th day of May, 2015.

By: s/*Michael Mishlove*
Michael Mishlove
Gonzalez Saggio & Harlan LLP
111 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
(414) 277-8500
*michael_mishlove@gshllp.com*

**CERTIFICATE OF SERVICE**

     I hereby certify that on May 8, 2015, a true and correct copy of the foregoing document was filed electronically. Notification of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                        s/*Michael Mishlove*
                        Michael Mishlove