**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**CORY GROSHEK, and all others**
**similarly situated,**

        Plaintiff,

   -vs-                                       **Case No. 15-C-157**

**TIME WARNER CABLE, Inc.**

        Defendant.

---

**DECISION AND ORDER GRANTING MOTION TO LIFT THE STAY, *NUNC PRO TUNC* TO MAY 25 (DKT. NO. 54); GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 55); DENYING PLAINTIFF'S MOTION TO SEAL (DKT. NO. 61); AND DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE SUR-REPLY AS MOOT (DKT. NO. 66)**

---

On March 29, 2016, the Honorable Rudolph T. Randa stayed the proceedings in this case pending a ruling from the Supreme Court in Spokeo, Inc. v. Robins (Dkt. No. 53); the Supreme Court issued its decision just short of two months later, on May 16. Spokeo, Inc. v. Robins, 134 S. Ct. 1540 (2016). Days later, the plaintiffs moved to lift the stay. Dkt. No. 54. At around the same time, the defendant moved to dismiss the complaint for lack of standing in light of Spokeo. Dkt. No. 55.

The named plaintiff also has asked the court to seal certain documents. Dkt. No. 61. The defendant opposed that motion, Dkt. No. 62, the plaintiff filed a reply, Dkt. No. 65, and on July 19, 2016, the defendant filed a motion requesting leave to file a sur-reply, Dkt. No. 66.

On August 2, the case was reassigned to this court.

A.  **<u>Plaintiff's Motion to Lift Stay (Dkt. No. 54)</u>**

The plaintiffs' May 24, 2016 motion to lift the stay simply noted that the Supreme Court had decided <u>Spokeo</u>, and thus that there was no longer any reason to delay moving forward. Dkt. No. 54. The defendant objected, arguing that the court ought to keep the stay in place until it could decide the defendant's May 27, 2016 motion to dismiss. Dkt. No. 58. The defendant argued that the motion to dismiss was based on the argument that the court does not have subject matter jurisdiction; if that turned out to be true, the court would not have jurisdiction to allow the parties to proceed with discovery or anything else. <u>Id.</u> at 58.

The court notes with interest that, despite the fact there was—and arguably until this order, continued to be—a stay in place, the defendant filed a motion to dismiss; the plaintiff filed a motion to seal; the defendant filed a motion to file a sur-reply; and the parties briefed all of these motions. A "stay" generally means that the parties should file nothing further in the litigation as long as the stay is in effect. The fact that a stay was in place does not appear to have prevented the parties from filing numerous documents while the stay was in place.

Bowing to the inevitable, the court will grant the motion to lift the stay, *nunc pro tunc* to May 25, 2016. Dkt. No. 54.

B.  **<u>Defendant's Motion to Dismiss (Dkt. No. 55)</u>**

Federal Rule of Civil Procedure 12(b)(1) provides for a party to bring a

motion to dismiss for lack of standing. In considering such a motion, the court must "accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." Lee v. City of Chi., 330 F.3d 456, 468 (7th Cir. 2003). The plaintiff, however, "as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing," including (i) injury in fact, (ii) causation, and (iii) redressability. Id. On a factual challenge to subject matter jurisdiction, district courts "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Evers v. Astrue, 536 F.3d 651, 656-57 (7th Cir. 2008).

To establish injury in fact, a plaintiff must show that he or she suffered an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). In Spokeo, the Court emphasized the distinction between concreteness and particularization. The latter is "necessary to establish injury in fact, but it is not sufficient. . . . We have made it clear time and again that an injury in fact must be both concrete *and* particularized." Spokeo, 136 S. Ct. at 1548 (emphasis in original). A concrete injury must be "'*de facto*'; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'

Concreteness, therefore, is quite different from particularization." Id.

The Spokeo Court went on to clarify that concrete is not "necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." Id. at 1549. In this context, the judgment of Congress is "important," but "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. A "bare procedural violation, divorced from any concrete harm, [cannot] satisfy the injury-in-fact requirement of Article III." Id.

The named plaintiff alleges that he applied for employment with the defendant, and that in the course of considering his application, the defendant obtained a consumer report on him "without first providing [him] a clear and conspicuous written disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes." Dkt. No. 1 at 4. He alleges that this failure to disclose violated §1681(b)(2)(A)(i) of the Fair Credit Reporting Act. Id. While the complaint alleges, in several places, that the defendant's action violated the Fair Credit Reporting Act, it makes no mention of any concrete harm the plaintiff (or any putative class members) suffered as a result of the alleged violation.

In his response to the defendant's motion to dismiss, the plaintiff

argues that the defendant's alleged violation of the FDCPA—obtaining consumer information about him without giving him a separate document warning him that it was going to do so—"invaded [the plaintiff's] privacy—a clear form of concrete harm that [the defendant] simply ignores in its motion." Dkt. No. 60 at 10. He also argued that the defendant unlawfully "sought to obtain *his* private information, and then it obtained *his* personal information as a result of the unlawful permission it received." Id. at 13. The named plaintiff argues that these two assertions constitute the kind of concrete, particularized injury Spokeo mandated as necessary to confer standing. Id.

      This court, and others, have rejected this argument. In Gubala v. Time Warner Cable, Inc., Case No. 15-cv-1078, 2016 WL 3390415 at *4 (E.D. Wis. June 17, 2016), this court held that while alleging a statutory violation satisfies the *particularized injury* prong of the injury-in-fact requirement discussed in Spokeo and other cases, it did not, in and of itself, demonstrate a concrete harm. In Gubala, the plaintiff alleged that the defendant had failed to abide by the Cable Communications Policy Act's requirement that cable companies destroy personally identifiable information after a customer has terminated service. Id. at *1. The court found that the fact that the defendant had failed to destroy the information did not constitute concrete harm.

> [The plaintiff] does not allege that the defendant has
> disclosed his information to a third party. Even if he had

> alleged such a disclosure, he does not allege that the disclosure caused him any harm. He does not allege that he has been contacted by marketers who obtained his information from the defendant, or that he has been the victim of fraud or identity theft. He alleges only that the CCPA requires cable providers to destroy personal information at a certain point, and that the defendant hasn't destroyed his.

Id. at 4.

The same is true in this case. The plaintiff has not alleged that he did not get the job he applied for as a result of the consumer report the defendant obtained. He has not alleged that the defendant released the information in the report to other people, causing him embarrassment or damaging his credit. He has not alleged that the defendant used the consumer report against him in any way. In fact, in his October 7, 2015 deposition, when defense counsel asked him if he was aware of anything in that might entitle him to actual damages, the plaintiff responded, "I do not know of any actual damages that I am claiming nor do I believe I've ever actually claimed actual damages against [the defendant] nor do I intend to." Dkt. No. 59-2 at 18 (deposition page 115), lines 9-11. In short, he has not alleged a concrete harm. See also, Smith v. The Ohio State Univ., Case No. 15-cv-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016) (no concrete injury based on allegation that defendant violated the FCRA by including extraneous information, such as a liability release, in the disclosure and authorization).

Because the plaintiff has not alleged a concrete harm resulting from

the defendant's alleged violation of the FDCPA, the plaintiff does not have standing, and the court must dismiss the case.

C.      **Plaintiff's Motion to Seal (Dkt. No. 61)**

The court has established that it does not have subject matter jurisdiction in this case. The court notes, however, that prior to the court reaching this decision, the plaintiff filed a motion asking the court to seal various portions of his deposition transcripts, supplemental answers to discovery, and any other document that might make mention of any settlement agreement between him and "another party." Dkt. No. 61.

On May 27, 2016, the defendant filed a "Notice of Filing." Dkt. No. 59. The notice indicated that the defendant was provisionally filing, under seal, Exhibits 1 and 2 to the declaration of Anthony E. Giardino. Id. at 1. Exhibit 1 was the plaintiff's entire deposition transcript. Exhibit 2 was the plaintiff's supplemental answers to the defendant's first interrogatories. Dkt. Nos. 59-2 and 59-3. The defendant explained that it did not believe that the documents contained confidential information. It was filing the documents under seal, it explained, because the plaintiff had attempted, unilaterally and in the absence of an agreed protective order, to deem the documents "confidential" and "attorneys' eyes only (by means of an e-mail, citing Civil Local Rule 26(e) of the Eastern District. Dkt. No. 59 at 1; Dkt. No. 59-1 at 3. In the notice, the defendant pointed out that pursuant to Civil Local Rule 79(d)(7), the plaintiff had twenty-one days from the date the notice was filed to file a motion to

- 7 -

seal, if he wanted to keep the documents under seal. Dkt. No. 59 at 1.

The plaintiff filed the instant motion to seal on June 17, 2016. Dkt. No. 61. The motion identifies specific pages in the deposition and the supplemental answers which the plaintiff wishes to keep under seal. Id. at 1. The plaintiff also attached to the motion a draft protective order.[1]

As grounds for sealing, the plaintiff states that the pages he seeks to keep sealed "concern confidential settlement agreements reached between [the plaintiff] and various third-parties." Id. at 2. He indicates that if the confidentiality of these documents were violated, the result would be a "serious financial burden" on the plaintiff. Id. He states that "[o]f principal concern, these agreements require that [the plaintiff] keep confidential the terms of the settlement, the fact of settlement, negotiations related to settlement, and documents related to those settlement negotiations." Id. at 1-2. He indicates that "the disclosure" of the documents would subject the plaintiff to legal action for breach of contract. Id. at 3. He also argues that the documents relate to private agreements between the plaintiff and other parties, outside of the context this case. Id.

As an initial matter, the court looked at some of the pages that the

---

[1] Attaching a protective order to a motion to seal is putting the cart before the horse, pursuant to this court's local rules. Civil Local Rule 26(e) does not allow a party to "deem" a document confidential by saying so in an e-mail to opposing counsel. Rather, it explains the process for obtaining a protective order—the proper method, in this district, for protecting confidential documents in the discovery process. Rule 26(f) provides for filing documents under seal, including "the filing of information covered by a protective order."

plaintiff alleges made reference to settlement negotiations and settlement agreements. The court was hard-pressed, on some pages, to find reference to anything related to settlements—the plaintiff's or anyone else's. Other pages do refer to the plaintiff making settlement demands on some companies, and to settling with some companies.

The plaintiff's argument in support of maintaining any of these documents under seal, however, is not persuasive. First, assuming that the plaintiff has entered into settlement agreements that prohibit him from disclosing the existence or terms of those agreements, it is not clear how the plaintiff has violated those agreements. It is the *defendant* who filed the documents, not the plaintiff. The plaintiff told the defendant in the e-mail at Dkt. No. 59-1 that he intended anything he said in his deposition or supplemental responses to be confidential, and he's filed the instant motion with this court. He has not publicly disclosed the information; he has *opposed* the disclosure of the information. So it is not clear how someone else's disclosure of information that he sought to keep private would constitute a violation of any agreements to which the plaintiff may be a party with entities not involved in this suit.

Further, the plaintiff's argument ignores the fact that he came to the court—a public forum—and instituted this lawsuit. He sued the defendant on a cause of action for which he has sued a number of other companies, and yet he argues that those other suits are irrelevant to this one. In

essence, he indicates that while he wants to be able to file suit against the defendant in federal court, he wants to prevent the defendant from enquiring into similar suits that he has filed against other companies for the same alleged conduct. That is not an appropriate basis for the court to seal documents from public view.

The court will deny the plaintiff's motion to seal.

D. **Defendant's Motion for Leave to File Sur-Reply (Dkt. No. 66)**

Finally, after the parties had fully briefed the motion plaintiff's motion to seal, the defendant filed a motion asking the court for leave to file a sur-reply. Dkt. No. 66. This court grants such leave only rarely; the local rules provide for a motion, a response and a reply, and in the vast majority of cases, this is sufficient.

Given the court's decision on the motion to dismiss, and on the motion to seal, the court will deny the motion for leave to file a sur-reply as moot.

E. **Conclusion**

The court **GRANTS** the plaintiff's motion to lift the stay, *nunc pro tunc* to May 25, 2016. Dkt. No. 54.

The court **GRANTS** the defendant's motion to dismiss. Dkt. No. 55. The court **ORDERS** that the complaint is dismissed for lack of subject matter jurisdiction, effective immediately. The clerk will enter judgment accordingly.

The court **DENIES** the plaintiff's motion to seal. Dkt. No. 61.

The court **DENIES AS** MOOT the defendant's motion for leave to file a sur-reply. Dkt. No. 66.

Dated in Milwaukee, Wisconsin this 9th day of August, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge